# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT AUKER, | ) |
| Plaintiff, | ) Civil Action No. 2: 14-cv-0179 |
| v. | ) United States District Judge |
| | ) Cathy Bissoon |
| JOHN E. WETZEL, Secretary for | ) |
| Pennsylvania Dept of Corrections, et al., | ) United States Magistrate Judge |
| | ) Cynthia Reed Eddy |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

It is respectfully recommended that the following motions filed by Plaintiff, Robert Auker, be denied as moot: Motion for Temporary Restraining Order (ECF Nos. 20 and 33), Motion for Preliminary Injunction and Motion for Emergency Transfer (ECF Nos. 11, 12, and 34), Motion for Aid from the Court (ECF Nos. 19 and 22), and Motion to Compel the Court (ECF No. 29). Despite minor differences in the motions, the Court will address the motions collectively given the similar and closely related nature of the requests made in each motion.

**II.  REPORT**

A.  *Procedural History*

Plaintiff, Robert Auker, a state inmate incarcerated at the State Correctional Institution at Greene, located in Waynesburg, PA, commenced this civil action against various individuals and/or agents employed with the Pennsylvania Department of Corrections. Plaintiff claims that he is a quadriplegic individual with multiple sclerosis ("MS") and he takes issue with the care and treatment provided to him by the medical department and other staff at SCI-Greene.

1

Plaintiff contends that Defendants have acted deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. In addition, Plaintiff makes the serious accusations that Defendant Byunghak Jin, M.D., the Medical Director of SCI-Greene, has sexually assaulted him and threatened to sexually assault him on several different occasions.

Within Plaintiff's several emergency motions, he requests various forms of relief, including an immediate transfer to SCI-Laurel Highlands, multiple forms of daily assistance, a powered, high-back reclining wheelchair, a "power patient lift" to transfer him to and from his bed, wheelchair, etc., as well as permission to attend the commissary, dining hall, exercise yards, library, religious services, and to the use the telephone on a daily or weekly basis. The relief sought in these motions closely parallels the relief sought by Plaintiff in his Complaint.

On May 5, 2014, the Court held an evidentiary hearing on Plaintiff's motions for injunctive relief. Counsel for Defendants were present in the courtroom, while Plaintiff and several of the Defendants participated via videoconference. Plaintiff was given the opportunity to present witnesses and evidence, but chose to rely on the pleadings. He introduced one Exhibit, a one page, single-spaced memorandum to "Debra Brumage, Administrative Officer, II, SCI Greene," which enumerates twenty-nine (29) medical complaints. Plaintiff was unable to explain who prepared the Exhibit and/or how the detailed information contained in the Exhibit was conveyed to the writer.

Defendants Dr. Jin and Irma Clish Vhilidal, Corrections Health Care Administrator, both testified.

B.  *Standard of Review*

Inmate *pro se* pleadings, like those filed here, which seek extraordinary, or emergency relief, in the form of preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure and are judged against exacting legal standards. As the United States Court of Appeals for the Third Circuit has explained:

> Four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Gerardi v. Pelullo,* 16 F.3d 1363 (3d Cir. 1994) (quoting *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir. 1985)).

A preliminary injunction is not granted as a matter of right. *Kerschner v. Mazurkewicz*, 670 F.2d 440, 443 (3d Cir. 1982). It is an extraordinary remedy. Given the extraordinary nature of this form of relief, a motion for preliminary injunction places precise burdens on the moving party. As a threshold matter, "it is a movant's burden to show that the 'preliminary injunction must be the only way of protecting the plaintiff from harm.'" *Emile v. SCI-Pittsburgh*, 2006 WL 2773261 at *6 (W.D.Pa. 2006) (quoting *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992)). Thus, when considering such requests, courts are cautioned that:

> [A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (emphasis deleted). Furthermore, the Court must recognize that 'an [i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case.' *Plain Dealer Publishing Co. v. Cleveland Typographical Union #53,* 520 F.2d 1220, 1230 (6th Cir. 1975), *cert. denied,* 428 U.S. 909 (1977). As a corollary to the principle that preliminary injunctions should issue only in a clear and plain case, the Court of Appeals for the Third

> Circuit has observed that "upon an application for a preliminary injunction to doubt is to deny." *Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir. 1937).

*Emile,* 2006 WL 2773261, at *6.

Accordingly, for an inmate to sustain his burden of proof that he is entitled to a preliminary injunction under Federal Rule of Civil Procedure 65, he must demonstrate both a reasonable likelihood of success on the merits and that he will be irreparably harmed if the requested relief is not granted. *Abu-Jamal v. Price*, 154 F.3d 128, 133 (3d Cir. 1998). If the movant fails to carry this burden on either of these elements, the motion should be denied since a party seeking such relief must "demonstrate <u>both</u> a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989).

Furthermore, in assessing a motion for preliminary injunction, the court must also consider the possible harm to other interested parties if the relief is granted. *Kershner*, 670 F.2d at 443. In addition, a request for injunctive relief in the prison context must be viewed with great caution because of the intractable problems of prison administration. *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995). Finally, a party who seeks an injunction must show that the issuance of the injunctive relief would not be adverse to the public interest. *Emile,* 2006 WL 2773261, at * 6 (citing *Dominion Video Satellite, Inc. v. Echostar Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001)).

In the past, inmates have frequently sought preliminary injunctive relief compelling prison officials to take certain actions with respect to them during the pendency of a lawsuit. Yet, such requests, while often made, are rarely embraced by the courts. Instead, applying Rule 65's exacting standards courts have frequently held that prisoner-plaintiffs have not shown that they

4

are entitled to use a motion for preliminary injunction as a vehicle to compel prison officials to provide them with some specific relief and services pending completion of their lawsuits. *See, e.g., Goodwin v. Glunt,* 2013 WL 5202088 (W.D.Pa. 2013) (denying inmate preliminary injunction); *Messner v. Bunner,* 2009 WL 1406986 (W.D.Pa. 2009) (denying inmate preliminary injunction); *Brown v. Sobina,* 2008 WL 4500482 (W.D.Pa. 2008) (denying inmate preliminary injunction); *Emile,* 2006 WL 2773261, *6 (W.D.Pa. 2006) (denying inmate preliminary injunction).

In particular, courts have been reluctant to accept inmate invitations to use preliminary injunctions as a means to judicially prescribe specific medical courses of treatment for inmates. In such instances, courts have typically declined such requests citing the inmate's failure to either demonstrate irreparable harm; *Rivera v. Pennsylvania Dep't Of Corrections*, 346 F. App'x 749 (3d Cir. 2009), *Rush v. Correctional Medical Services, Inc.,* 287 F. App'x 142 (3d Cir. 2008), or show a likelihood of success on the merits. *Quinn v. Palakovich*, 204 F. App'x 116 (3d Cir. 2006).

    C.    *Discussion*

Plaintiff's requests for injunctive relief are based on two broad categories of allegations: (i) the alleged failure of Defendants to provide Plaintiff medical treatment, including providing him with various assistive devices and (ii) the alleged actual and threatened sexual assaults by Dr. Jin.

    1.    <u>Alleged Failure to Provide Medical Care</u>

The Court begins by observing that the gravamen of Plaintiff's complaint is that prison officials have violated his rights under the Eighth Amendment to the United States Constitution

by displaying "deliberate indifference" to his medical needs. Plaintiff faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities. To sustain such a claim, he must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id*. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

*Beers–Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id. at 837." Garvey v. Martinez, 08–2217, 2010 WL 569852, at *6 (M.D. Pa. Feb.11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Plaintiff is required to allege facts that demonstrate (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Such indifference may be

6

evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," *White v. Napoleon,* 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation. *Estelle*, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D.Pa. 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. *See e.g. Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; *see, e.g., Ham v. Greer*, 269 F. App'x 149 (3d Cir. 2008); *James v. Dep't of Corrections*, 230 F. App'x 195 (3d. Cir. 2007); *Gillespie v. Hogan*, 182 F. App'x 103 (3d Cir. 2006); particularly where it can be

7

shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. "Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts." *James v. Pennsylvania Dept of Corrections,* 230 F. App'x 195, 197–198 (3d Cir. 2007). (citations omitted).

Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983, since "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D.Pa. 1997) (citations omitted). *See e.g., Gause v. Diguglielmo*, 339 F. App'x 132 (3d Cir. 2009) (dispute over choice of medication does not rise to the level of an Eighth Amendment violation); *Innis v. Wilson*, 334 F. App'x 454 (3d Cir. 2009) (same); *Ascenzi v. Diaz*, 247 F. App'x 390 (3d Cir. 2007) (same). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979) (*quoting Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir.1977)).

These guiding principles, which determine the ultimate merits of inmate Eighth Amendment claims, also frequently define the availability of preliminary injunctive relief in such cases. State inmates in Pennsylvania have in the past often invited federal courts to entertain preliminary injunctions directing their jailers to provide them with specially tailored treatment protocols. Yet, these requests, while frequently made, have rarely been embraced by the courts. *Rivera v. Pennsylvania Dep't Of Corrections*, 346 F. App'x 749 (3d Cir. 2009); *Rush v.*

*Correctional Medical Services, Inc.*, 287 F. App'x 142 (3d Cir. 2008); *Quinn v. Palakovich*, 204 F. App'x 116 (3d Cir. 2006).

In this case, much of Plaintiff's argument in his motions for injunctive relief amounts to little more than a disagreement between he and the medical staff at SCI-Greene, which as a matter of law fails as a constitutional claim. *See, e.g., Gause v. Diguglielmo*, 339 F. App'x 132 (3d Cir. 2009). In essence, Plaintiff is seeking two primary measures of relief: (1) that he be transferred to SCI-Laurel Highland and (2) that he be seen by an outside "MS neurologist."

At the outset, the Court notes that when reaching its decision on the request for injunctive relief, the Court sits as both the arbiter of legal disputes and trier of fact and is therefore tasked with resolving factual disputes and assessing the credibility of witness testimony. *One Three Five, Inc. v. City of Pittsburgh,* 951 F. Supp.2d 788, 808 (W.D.Pa. 2013) (citing *Hudson Global Resources Holdings, Inc. v. Hill,* 2007 WL 1545678, at *8 (W.D.Pa. 2007)) ("A court considering whether to grant a preliminary injunction may assess the credibility of witnesses testifying before it at a preliminary injunction hearing, and base its decisions on credibility determinations."). Plaintiff's credibility has certainly been called into question in this lawsuit and in these proceedings.

The Court personally observed that there was a striking dichotomy between Plaintiff's behavior and apparent inability to communicate during the evidentiary hearing and the detailed filings he has made in this lawsuit. At the hearing, Plaintiff was in a wheelchair and his head was stooped forward, he was severely shaking, his back was forward, and he displayed an overall lack of ability to communicate, gesturing only with hand motions, and occasionally writing his

responses. When asked by the Court, he indicated that he was not able to type and had been filing his legal documents with the aid of an individual, the identity of whom he did not know.

Attempts to communicate with Plaintiff during the hearing were difficult, but with prompting he was able to respond using hand gestures in response to questions posed to him by the Court. At the beginning of the hearing, Plaintiff wrote with great difficulty; however, the Court notes that when Plaintiff was notified that the Defendants had agreed to arrange for an independent neurological examination, he clearly became upset and wrote detailed notes explaining that he did not trust Dr. Jin and did not want to be examined by any physician recommended by Dr. Jin.

The Court also observes that this litigation was initiated only three months ago, yet to date, Plaintiff has filed approximately twenty-two (22) documents, all of which are typed and contain an inordinate amount of detail, often describing personal information about the Plaintiff and his various medical needs, totaling approximately 181 typed pages. Based on the Court's personal observations of Plaintiff during the evidentiary hearing, he appeared to have no ability to communicate in this level of detail. And although Plaintiff indicated that he could not type, Dr. Jin testified that he personally observed Plaintiff typing "a few days" before the hearing.

Further, Defendants introduced into evidence video footage from 2011. According to Defendant Vihladel, on November 9, 2011, Plaintiff arrived in the infirmary via wheelchair reporting that he was unable to care for himself and was experiencing lower limb paralysis. At that time, a decision was made to place Plaintiff in the infirmary until he could be transferred to a long-term care facility. However, in video taken on December 10, 2011 and December 12, 2011, Plaintiff is seen getting up from his wheelchair, standing without assistance for an extended

period, moving around his cell freely, and most significantly, reaching and covering a vent in the twelve-foot ceiling, where the camera was "hidden." After viewing the video footage, the medical staff decided to discharge Plaintiff from the infirmary on December 14, 2011, and rescind their decision to transfer him to long term care.[1]

Dr. Jin testified that he began his employment at SCI-Greene in 2005 and became the Medical Director in approximately 2006. He has been treating Plaintiff since 2005. When Dr. Jin first began treating Plaintiff, he was able to walk and take care of himself. He made claims that he had MS and suffered from rectal and urinary incontinence, and was requesting "Z-Code" status, which is single-cell status. Upon examination, Dr. Jin found no evidence of any type of incontinence and Plaintiff's request for Z-Code status was denied.

Dr. Jin noted that Plaintiff has a long history of stating that he has MS and complaining of uncontrollable shaking and weakness in his legs. However, through the years, Plaintiff's physical examinations and various tests have provided no objective basis for Dr. Jin and the medical staff to believe that Plaintiff's complaints and concerns are genuine. Dr. Jin testified that Plaintiff was authorized for an EMG and nerve conduction test, but he refused on "religious grounds."

Currently, Plaintiff reports that he is a paraplegic / quadriplegic with memory loss, and does not have the ability to type. Dr. Jin testified that Plaintiff has no evidence of muscle atrophy or skin irritations and that his mental ability is extraordinarily sharp. Dr. Jin also testified that all of Plaintiff's sick call slips are typed and contain very accurate and detailed information.

---

[1] In his Declaration in Support of Motion for a Preliminary Injunction and Temporary Restraining Order, Plaintiff states that in "December 2011, [he] experienced temporary feeling in legs, could somewhat stand for brief minutes until vertebra repinched spinal-cord & legs collapse, returned to full paresis." ECF No.11-2 at 2, ¶ 6.

11

According to Dr. Jin, "it is a mystery to me as to what is going on" as no spastic pathology has been found.

In his motions for injunctive relief, Plaintiff seeks wide-ranging relief, sometimes of a permanent nature, including the following:

> Plaintiff requests this court to "order" the "United States Marshals" (or other Officers) "**to physically remove plaintiff with all of plaintiff's personal property**" & "transport plaintiff in a Highback Wheelchair by **Wheelchair Ambulance**" or "regular **Ambulance**" if Highback Wheelchair is unavailable, (due to cervical & multiple spinal diseases, & MS) and "**immediately transport per transfer**" to "SCI Laurel Highland" "without prior notice" given to "adverse party" (defendants) of court's transport / transfer orders.

Mot for Prel Injunction & Temp Rest Order (ECF No. 11 at ¶ 28) (emphasis in original). In essence, Plaintiff is inviting the Court to override the judgment and discretion of prison officials with respect to his housing placement. This request is directed not merely at preserving the status quo; instead, Plaintiff seeks mandatory preliminary relief that goes well beyond maintaining the status quo. In this situation, the burden on the moving party is particularly heavy. *See Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980); *Acierno*, 40 F.3d at 653.

Where a plaintiff requests an injunction that would require the Court to interfere with the administration of a prison, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 32, 379 (1976). The federal courts are not overseers of the day-to-day management of prisons. Prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell,* 418 U.S. 538, 566 (1974).

The ultimate relief Plaintiff seeks is an order transferring him to SCI-Laurel Highlands. It is well settled that Plaintiff has no federal liberty interest guaranteeing that he remain in a

particular prison, be transferred to another correctional facility, or be prevented from transferring to another correctional facility, either within the same state or interstate. *Olim v. Wakinekona*, 461 U.S. 238, 247 (1983); *Beshaw v. Fenton*, 635 F.2d 239 (3d Cir. 1980), *cert. denied*, 453 U.S. 912 (1981). Because Plaintiff has virtually no likelihood of success on this demand, he cannot meet his burden to warrant granting this extraordinary relief.

As to Plaintiff's second request for relief, that he be sent to an outside "MS neurologist," Defendants have agreed to refer Plaintiff for an outside consultation with a neurologist so that Plaintiff's current health status can be independently assessed. Given that Defendants have voluntarily undertaken this action, the Court finds that Plaintiff's request for an examination by a "MS neurologist" are moot.

2.   *Alleged Actual and Threatened Sexual Assaults by Dr. Jin*

Plaintiff also brings claims against Dr. Jin for alleged actual and threatened sexual assaults which have occurred on several different occasions. The Court notes that Plaintiff and Dr. Jin have discrepant views of the events which Plaintiff describes as sexual assaults.

Perhaps the most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. *See Continental Group, Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 356 (3d Cir. 1980). The relevant inquiry is whether the party moving for the injunctive relief is in danger of suffering the irreparable harm at the time the preliminary injunctive relief is to be issued. *Id*. Speculative injury does not constitute a showing of irreparable harm. *Continental,* 614 F.2d at 359: *see also Public Serv. Co. v. West Newbury*, 835 F.2d 380, 383 (1st Cir. 1987). Of course, a prisoner lacks standing to seek injunctive relief if he

13

is no longer subject to the alleged conditions he attempts to challenge. *See Weaver v. Wilcox*, 650 F.2d 22, 27 n. 13 (3d Cir. 1981) (prisoner's transfer from the prison moots claim for injunctive and declaratory relief with respect to prison conditions, but not claims for damages.)

Defendants have acquiesced in the Court's suggestion that Dr. Jin have no further contact with Plaintiff, unless there is a medical emergency and no other medical provider is present to assist Plaintiff. If that situation arises, there will be other medical personnel present with Dr. Jin. Therefore, the Court finds that the possibility of future harm is speculative and Plaintiff's allegations about future assaults are moot.

### III. CONCLUSION

For all the foregoing reasons, it is recommended that the various motions seeking injunctive relief be denied as moot.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed until May 27, 2014, to file objections. Failure to timely file objections will constitute a waiver of any appellate rights. *Brightwell v. Lehman,* 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.

*s/ Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge

Dated: May 9, 2014

cc: ROBERT AUKER
BK-1943
SCI Greene
175 Progress Drive
Waynesburg, PA 15370

Yana L. Warshafsky
Office of the Attorney General
Email: ywarshafsky@attorneygeneral.gov

Kathryn M. Kenyon
Pietragallo Gordon Alfano Bosick & Raspanti, LLP
Email: KMK@Pietragallo.com

Matthew R. Zwick
Weber Gallagher Simpson Stapleton Fires & Newby LLP
Email: mzwick@wglaw.com

Samuel H. Foreman
Weber Gallagher Simpson Stapleton Fires & Newby
Email: sforeman@wglaw.com